**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAMBRIDGE PLACE INVESTMENT MANAGEMENT INC., <br><br> Plaintiff, <br><br> v. <br><br> MORGAN STANLEY & CO., INC., *et al.*, <br><br><br> Defendants. | Case No. 1:10-cv-11376 <br><br><br><br> Hearing Date: <br> November 8, 2010, 2:30 pm |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................ii

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.    CPIM Has Had A Lengthy And Extensive Business Relationship With
            Each Of The Clients.................................................................................... 2

      B.    CPIM's Clients Executed Complete Assignments Of "All Right, Title and
            Interest" In Their Claims Against Defendants To CPIM In Exchange For
            Consideration ............................................................................................. 4

      C.    CPIM Is The Sole Proper Plaintiff and Real Party In Interest In This
            Action ......................................................................................................... 5

      D.    Procedural History In This Court................................................................ 6

III.  ARGUMENT ....................................................................................................... 8

      A.    Jurisdictional Discovery Cannot Support Removal Based on Diversity
            Jurisdiction Because Such Removal Was Invalid Under the Rule of
            Unanimity ................................................................................................... 8

      B.    Jurisdictional Discovery Is Not Warranted Because There Was A
            Complete Assignment of Legal Claims to the Plaintiff ............................. 9

      C.    Even If The Court Assumes There Was A Partial Assignment,
            Jurisdictional Discovery Is Not Warranted............................................. 13

      D.    Jurisdictional Discovery Is Not Warranted Because Defendants Were
            Properly Joined and Defendants' Request for Discovery Is Not Likely To
            Result in Any Relevant Evidence ........................................................... 16

      E.    Defendants' Proposed Discovery Is Unnecessary, Irrelevant And
            Overbroad ................................................................................................ 18

IV.   CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdullah v. Acands, Inc.*,
    358 F.3d 264 (1st Cir. 1994) ................................................................16

*Allstate Ins. Co. v. Hughes*,
    358 F.3d 1089 (9th Cir. 2004) .............................................................11

*Amalgamated Gadget, L.P. v. Mack,*
    2004 WL 549483 (N.D. Tex. Feb. 10, 2004)..........................................9

*Attorneys Trust v. Videotape Computer Prods., Inc.*,
    93 F.3d 593 (9th Cir. 1996) ......................................................13, 14, 15

*Barry v. Duffin*,
    195 N.E. 511 (Mass. 1935) ...................................................................12

*Cohen v. Office Depot, Inc.*,
    204 F.3d 1069 (11th Cir. 2000) ............................................................16

*Cunningham v. BHP Petroleum Great Britain PLC*,
    427 F.3d 1238 (10th Cir. 2005) ............................................................12

*Emerald Investors Trust v. Gaunt Parsippany Partners*,
    492 F.3d 192 (3d Cir. 2007).................................................................12

*Grassi v. Ciba-Geigy, Ltd.*,
    894 F.2d 181 (5th Cir. 1990) ...............................................................13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    307 F. Supp. 2d 190 (D. Mass. 2004) .................................................8, 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    431 F.Supp. 2d 109 (D. Mass. 2006)....................................................17

*JMTR Enterprises, L.L.C. v. Duchin*,
    42 F. Supp. 2d 87 (D. Mass. 1999).........................................13, 14, 15

*Larabee v. Potvin Lumber Co.*,
    459 N.E.2d 93 (Mass. 1983) .................................................................11

*Lapides v. Bd. Of Regents of the Univ. Sys. Of Ga.*,
    535 U.S. 613 (2002)................................................................................8

*MHI Shipbuilding, LLC v. Nat'l Fire Ins. Co. of Hartford*,
    286 B.R. 16 (D. Mass. 2002) ..........................................................11, 12

*Montana v. Abbot Labs.*,
 266 F. Supp. 2d 250 (D. Mass. 2003) ...................................................................................9

*Michaels Building Co. v. Ameritrust Co.*,
 848 F.2d 674 (6th Cir. 1988) ...............................................................................................17

*Murphy v. Newell Operating Co.*,
 245 F. Supp. 2d 316 (D. Mass. 2003) ...................................................................................9

*O'Connor Cafe of Worcester, Inc. v. Liquor Liab. Joint Underwriting Ass'n of Mass.*,
 1999 WL 792199 (Mass. Super. Ct. Sept. 13, 1999) ......................................................11, 13

*Overseas Development Disc. Corp. v. Sangamo Construction Co.*,
 686 F.2d 498 (7th Cir. 1982) ...............................................................................................12

*Palmer v. Davol, Inc.*,
 2008 WL 5377991 (D.R.I. Dec. 23, 2008) .....................................................................16, 17

*Platt v. Plymouth Rock Assurance Corp.*,
 2006 WL 279045 (Mass. App. Div. Jan. 10, 2006) ..............................................................12

*Reinhart Oil & Gas, Inc. v. Excel Directional Tech. LLC*,
 463 F. Supp. 2d 1240 (D. Colo. 2006) .................................................................................15

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
 554 U.S. 269, 128 S. Ct. 2531 (2008) ............................................................................10, 11

*Tapscott v. MS Dealer Serv. Corp.*,
 77 F.3d 1353 (11th Cir. 1996) ..............................................................................................16

*W.R. Huff Asset Management Co. LLC v. Deloitte & Touche LLP*,
 549 F.3d 100 (2d Cir. 2008) .................................................................................................15

**RULES**

Fed. R. Civ. P. 17(a) ........................................................................................................11, 12

Fed. R. Civ. P. 20(a)(2)(A) .............................................................................................11, 12

Massachusetts Rule of Civil Procedure 17(a).........................................................................12

Plaintiff Cambridge Place Investment Management Inc. ("CPIM" or "Plaintiff") hereby submits this memorandum of law in opposition to Defendants' motion for leave to take jurisdictional discovery.[1]

## I.   INTRODUCTION

Defendants, after removing this action from state court in August, waited for months before seeking jurisdictional discovery, and then only did so four days prior to the agreed upon deadline for Defendants' opposition to the Plaintiff's remand motion.  In their joint motion, Defendants offer no explanation for their delay.  Indeed, while the basis of Defendants' removal has always been "related to" bankruptcy jurisdiction, certain Defendants' removal notices refer in footnotes to the possibility of asserting diversity jurisdiction and seeking jurisdictional discovery.  All Defendants collectively sat on their hands for a transparent reason:  there is no valid basis for asserting diversity jurisdiction, and jurisdictional discovery will serve only to increase costs and delay proceedings.

This Court should deny Defendants' motion for discovery because no amount of discovery will cure a requirement that all Defendants consent to removal based on diversity jurisdiction.  As explained below in Section III(A), finding diversity jurisdiction here would violate the "rule of unanimity."

Defendants' motion should also be denied because jurisdictional discovery is irrelevant and unnecessary.  As established by the accompanying Assignment Agreements, CPIM is the correct plaintiff and it is the absolute owner of the claims through complete and valid assignments.[2]  While Defendants characterize the assignments of claims to CPIM as "partial"

---

[1]    All references herein to the "Complaint" refers to the Complaint and Jury Demand filed by Plaintiff on July 9, 2010.  Capitalized terms, unless otherwise defined, have the same meanings as those used in the Complaint.

[2]    Plaintiff CPIM concurrently submits copies of the Assignment Agreements between the Clients and CPIM as exhibits to the accompanying Declaration of David Stickney in Opposition to Defendants' Motion for

assignments," in truth, the assignments are each complete assignments of "all of [assignor's] rights, title and interest in any and every claim that [assignor] had or may have had against [defendant] . . . ."  See Section III(B).  Moreover, leave for jurisdictional discovery should not be granted because, even should the Court weigh the factors used to ascertain the legitimacy of partial assignments (which are not at issue here), there is sufficient evidence to conclude that the assignments were not collusive.  See Section III(C).  Finally, Defendants' argument regarding misjoinder is not only completely without merit, but provides no support for jurisdictional discovery.  See Section III(D).

In short, Defendants' belated attempt to convert their basis for removal from "related to" bankruptcy jurisdiction to diversity jurisdiction should be denied.  No amount of discovery will change the fact that CPIM, an entity that has long provided investment advisory services for the assignors, received complete assignments of their claims rendering this Court without diversity jurisdiction.

## II.   FACTUAL BACKGROUND

### A.   CPIM Has Had A Lengthy And Extensive Business Relationship With Each Of The Clients

Plaintiff CPIM, a Delaware corporation with its principal place of business in Concord, Massachusetts, has provided investment advisory services for each of the assignors since their creation, dating back to 2003.[3]  CPIM "was responsible for the sourcing, review and due diligence of U.S. investments" for each assignor, including "the sourcing, review and due diligence of all U.S. subprime and Alt-A mortgage-backed securities."[4]  Specifically, the

---

Jurisdictional Discovery (the "Stickney Decl.").  The Assignment Agreements provide more than sufficient information to respond to Defendants' proposed Document Requests 1-6.

[3]      *See* Assignment Agreements (Exhs. 1-9 to the Stickney Decl.), Recital (A), at 1.

[4]      *See* Complaint, ¶ 67; *see also* Assignment Agreements (Exhs. 1-9 to the Stickney Decl.), Recital (B), at 1.

Securities that are the subject of the Complaint were offered for sale to CPIM (on behalf of the Clients) in Massachusetts..[5]

CPIM – and not its Clients – was solicited in Massachusetts by the Wall Street Bank Defendants and the Depositor Defendants who, during face-to-face meetings and in writing, offered or sold the Securities to CPIM between 2005 and 2007.[6]  The Wall Street Bank Defendants provided CPIM with information relevant to each Security, including Offering Documents, "term sheets, pooling and servicing agreements, data, computational material, data regarding the [loan-to-value] and debt-to-income ratios of the pools, computer models of the financial structures of the securitizations, tabular sensitivity data, loan tapes, rating agency expected loss levels, emails, sampling data regarding credit/compliance/appraisal and due diligence, 'kickout' criteria and data, and collateral characteristics."[7]  The Wall Street Bank Defendants also provided CPIM with "pitch books" and other materials regarding the credit quality of the Securities.[8]

In making their offers and sales of the Securities, the Wall Street Bank Defendants had no contact with the Clients.  CPIM, through its employees and records located in Concord, Massachusetts, has direct knowledge about the misrepresentations and purchases of each of the Securities, and was the direct recipient of the documents provided to CPIM and the oral representations made to CPIM by Defendants in connection with the offer and sale of the Securities.[9]

---

[5]     *See* Complaint, ¶67; *compare* Assignment Agreements, "Schedule A – The Bonds", *with* Complaint, Appendices A-O.

[6]     *See* Complaint, ¶ 14, *see also* Assignment Agreements (Exhs. 1-9 to the Stickney Decl.), Recital (C), at 1.

[7]     Complaint, ¶ 68.

[8]     *Id.*, ¶ 71.

[9]     *Id.*, ¶¶ 67-71.

**B.      CPIM's Clients Executed Complete Assignments Of "All Right, Title and Interest" In Their Claims Against Defendants To CPIM In Exchange For Consideration**

As alleged in the Complaint, Defendants' statements made in the course of their offers and sales of the Securities to CPIM contained material misstatements and omissions, and, as a result, the Securities purchased by CPIM on behalf of the Clients resulted in losses exceeding $1.2 billion.[10]

Because CPIM is the party with personal knowledge of each transaction and the representations made in connection with each transaction, and because the offers and sales were made in Massachusetts, "CPIM [is] best positioned to pursue these claims in an efficient and appropriate manner."[11]   The Assignment Agreements completely assigning all claims to CPIM were formally executed between April 29, 2010 and July 6, 2010.[12]

While Defendants' motion characterizes the assignments as "partial," the Clients executed <u>complete</u> assignments of all of their legal rights, title or interest in claims related to the Securities, agreeing to:

> assign[], transfer[], and set[] over . . . to CPIM <u>all right, title and interest of [the Clients]</u> in and to any demands, claims, accounts, actions, causes of action, and suits (in all instances, whether arising in contract, tort or by virtue of an U.S. federal or state statutes), against the Dealers arising under, by reason of, or in any way relating to the Bonds.[13]

In consideration for the Clients' complete assignment of all claims to CPIM, CPIM agreed to pay them a percentage of any net recoveries received as a result of settlement or

---

[10]      Complaint, ¶ 1.

[11]      Assignment Agreements (Exhs. 1-9 to the Stickney Decl.), Recital (E), at 1.

[12]      *See* Assignment Agreements (Exhs. 1-9 to the Stickney Decl.).

[13]      *See, e.g.*, Ex. 1 to the Stickney Decl., at ¶ 1.1 (emphasis added).  Each of the Assignment Agreements contains identical, or substantially identical, complete assignment clauses.  *See* Exh. 2, ¶ 1; Exh. 3, ¶ 1; Exh. 4, ¶ 1; Exh. 5, ¶¶ 1, 1.1, 1.2; Exh. 6, ¶ 1; Exh. 7, ¶ 1; Exh. 8, ¶ 1; Exh. 9; ¶ 1.

judgment in this action.[14]  The assignors transferred all ownership of the claims and retain no

legal interest in, or financial responsibilities for, the prosecution of this action.  In addition, the

irrevocable assignors – consistent with standard practice on assignments – appointed CPIM as

their "true, and lawful attorney," and, to confirm that the assignors had no subsisting interest in

the control or conduct of the actions, the assignors acknowledged CPIM's possession of  "full

authority and discretion in deciding whether and at what amount to settle, compromise or release

any of the Claims."[15]  If this action does not result in any recovery, CPIM and its counsel bear all

responsibility for the cost of the litigation.  The Assignment Agreements require the Clients to

"take any and all reasonable actions . . . to complete, effectuate, and perfect the assignment . . .

so as to ensure that any potential defendants to the assigned subject matter are not subjected to

litigation in more than one judicial action concerning the assigned subject matter."[16]

> **C.     CPIM Is The Sole Proper Plaintiff and Real Party In Interest In This
> Action**

On July 9, 2010, CPIM filed this action in Superior Court, Business Litigation Session, in

Suffolk County, Massachusetts, and timely served Defendants with the Summons and

Complaint.  As stated in the Complaint, and as confirmed by the Assignment Agreements,

CPIM, "as the exclusive assignee of, and the exclusive attorney-in-fact for and with respect to,

all of the Clients' claims relating to the offer and sale of Securities," is the sole legitimate

---

[14]     The Assignors agreed to various amounts of consideration in exchange for the complete assignment.  *See* Ex. 1 to the Stickney Decl., ¶ 2 (57% - 70% of net recoveries depending on stage of litigation after which recovery is awarded), Ex. 2, ¶ 2.2 (50%); Ex. 3, ¶ 2.1 (55%); Ex. 4, ¶ 2.1 (50%); Ex. 5, ¶ 2.1 (50%); Ex. 6, ¶ 2.1.1 (67.5%); Ex. 7, ¶ 2 ($10,000 outright, plus 10%-25% of recovery depending on amount of recovery); Ex. 8, ¶ 2.1.1 (67.5%); Ex. 9; ¶ 2.1.1 (67.5%).  "Net recoveries" were defined in each Assignment Agreement, and excluded "expenses," defined as "all costs and disbursements of any nature whatsoever reasonably incurred in respect of the Claims from time to time by CPIM or the main litigation and trial lawyers it appoints" including without limitation all related counsel and expert fees and travel and accommodation expenses.  *See, e.g.,* Ex. 1, ¶ 2.4.

[15]     *See* Stickney Decl., Exhs. 1-3, 5-9, ¶ 4; Ex. 4, ¶ 5.

[16]     *See* Stickney Decl., Exhs. 1-3, 5-9 ¶ 3; Exh. 4, ¶ 4.

Plaintiff and real party in interest.[17]  Plaintiff brings claims solely under the Massachusetts Securities Act.

###        D.        Procedural History In This Court

On August 13, 2010, seven Defendants removed this action to this Court on the basis that the action is "related to" ongoing bankruptcy filings by some of the originators of the mortgage loans underlying the Securities, none of which are parties to this action.  Only forty-eight of the sixty Defendants consented to or joined in the removal within thirty days of service of the Complaint (the "Removing Defendants").[18]  Six other Defendants failed to consent to removal within thirty days of service,[19] and six additional Defendants failed to consent to removal at all.[20]

---

[17]        Complaint, ¶ 13.

[18]        *See* ECF Nos. 2, 9, 12, 13, 16, 17, 21, 22, 32, 33, 36, 37, 42, 43, 45, 49, 63, 65.

[19]        These six defendants and the dates when they were served with process and then, more than 30 days later, filed untimely consents to removal are as follows:

| Defendant | Date of Service | Date of Untimely Consent to Removal |
| --- | --- | --- |
| Aegis Asset Backed Securities Corp. | July 15, 2010 (State Court Dkt. No. 46) | October 6, 2010 (ECF No. 155) |
| Ameriquest Mortgage Securities Inc. | July 15, 2010 (State Court Dkt. No. 45) | August 26, 2010 (ECF No. 116) |
| Argent Securities Inc. | July 15, 2010 (State Court Dkt. No. 44) | August 26, 2010 (ECF No. 116) |
| NovaStar Mortgage Funding Corp. | July 15, 2010 (State Court Dkt. No. 53) | September 16, 2010 (ECF No. 138) |
| Park Place Securities, Inc. | July 15, 2010 (State Court Dkt. No. 54) | August 26, 2010 (ECF No. 116) |
| Popular ABS, Inc. | July 15, 2010 (State Court Dkt. No. 26) | August 24, 2010 (ECF No. 111) |

[20]        The six defendants that have never consented to removal and the dates when they were served with process are as follows:

None of the Removing Defendants removed this action on the basis of diversity jurisdiction. Twenty of the forty-eight removing Defendants, however, suggested in footnotes to their removal papers that removal "may" be proper based on diversity because Plaintiff is the assignee of its clients' claims.[21]

On September 13, 2010, CPIM timely moved to remand this action to Massachusetts state court for lack of "related to" bankruptcy subject matter jurisdiction, or, alternatively, to remand this action based on mandatory abstention or equitable remand grounds.[22]  CPIM's motion addressed certain Defendants' off-handed footnote reference to diversity jurisdiction, stating that there was no diversity jurisdiction here because "the assignment of the Clients' claims to Plaintiff is legitimate" and, in any event, "removal based on diversity is invalid because removal was not unanimous."[23]

Following CPIM's motion to remand this action to state court, Defendants requested additional time to respond to Plaintiff's motion.  The parties negotiated and filed on September 22, 2010, an assented to motion regarding a briefing schedule for the submission of Defendants' opposition to the motion to remand (October 22, 2010) and CPIM's reply (November 19,

| Defendant | Date of Service with Process |
| --- | --- |
| Accredited Mortgage Loan REIT Trust | July 15, 2010 (State Court Dkt. No. 48) |
| Alliance Securities Corp. | August 5, 2010 (ECF No. 81) |
| American Home Mortgage Assets LLC | July 15, 2010 (ECF No. 82) |
| Fieldstone Mortgage Investment Corp. | July 15, 2010 (State Court Dkt. No. 36) |
| New Century Mortgage Securities LLC | July 15, 2010 (State Court Dkt. No. 27) |
| New Century Mortgage Securities, Inc. | July 15, 2010 (State Court Dkt. No. 27) |

[21]    See ECF No. 1, at 12 n.2; ECF No. 9, at 1 n.2; ECF No. 13, at 5 n.1; ECF No. 43, at 5 n.2; ECF No. 63, at 3 n.2; ECF No. 65, at 1 n.1.

[22]    ECF No. 134.

[23]    Id., at 15 n.5.

2010).[24]  At no point during those negotiations did Defendants raise the possibility that they would move for leave to take jurisdictional discovery.

Approximately one month after agreeing to a schedule for resolving CPIM's motion to remand, and just 4 days before the negotiated and agreed upon due date for the Defendants' opposition to CPIM's motion, counsel for two of the Defendants informed CPIM's counsel for the first time that Defendants intended to move for jurisdictional discovery and to extend the agreed-upon briefing schedule.  Three hours later, Defendants sent their proposed discovery and insisted that Plaintiff respond within one hour.  CPIM refused to agree to Defendants' proposed motion, and Defendants filed their Motion for Leave to Take Jurisdictional Discovery and to Extend Briefing on Plaintiff's Motion to Remand on October 18, 2010.[25]  On October 19, 2010, this Court denied Defendants Motion to Extend Briefing on Plaintiff's Motion to Remand, and scheduled a hearing on their request to take jurisdictional discovery for November 8, 2010.

## III.   ARGUMENT

### A.   Jurisdictional Discovery Cannot Support Removal Based on Diversity Jurisdiction Because Such Removal Was Invalid Under the Rule of Unanimity

Defendants' assertion that jurisdictional discovery will somehow support removal on the basis of diversity jurisdiction is unavailing.  Removal on that basis is invalid for a threshold reason that cannot be cured by any discovery.  "In cases involving multiple defendants, . . . [the] rule of unanimity requires that all defendants file their notice of removal or consent to removal within thirty days of being served, and <u>failure to do so is a ground for remand</u>."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 190, 193 (D. Mass. 2004) (emphasis added) (citing *Montana v. Abbot Labs.*, 266 F. Supp. 2d 250, 260 (D. Mass. 2003) and *Lapides v.*

---

[24]     ECF No. 148.

[25]     *See* Stickney Decl., ¶ 2; ECF No. 158.

*Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002)).  "[F]ederal courts have universally required unanimity of consent in removal cases involving multiple defendants." *Montana v. Abbot Labs.*, 266 F. Supp. 2d at 261.

Six Defendants in this action were served with process and failed to file a notice of, or consent to, removal within 30 days of service.  *See supra*, n. 19.  The untimely consents filed by these six Defendants are invalid.  *See Montana v. Abbot Labs.*, 266 F. Supp. 2d at 260; *Murphy v. Newell Operating Co*., 245 F. Supp. 2d 316, 319 (D. Mass. 2003).  Six additional Defendants were served with process but have never filed a notice of, or consent to, removal.  *See supra*, n. 20.  Removal of this action based on diversity is therefore invalid.

None of the jurisdictional discovery requested by Defendants will change the rule of unanimity, and "the case <u>must</u> be remanded because not all defendants have consented to [the timely removing defendants'] removal petition within thirty days."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d at 194 (emphasis added).

### B.    Jurisdictional Discovery Is Not Warranted Because There Was A Complete Assignment of Legal Claims to the Plaintiff

When there is a complete assignment of claims to a plaintiff, as there is here, courts do not look beyond the face of the assignment to the motive or business or other interests of the plaintiff in the subject matter of the claims.  *See Amalgamated Gadget, L.P. v. Mack,* 2004 WL 549483, at *4 (N.D. Tex. Feb. 10, 2004) ("Once it is determined that the assignment was a complete assignment, the Court's inquiry ends, and the Court does not examine whether the assignment was 'improperly or collusively made.'") (citing *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828 n.9 (1969)).  The Assignment Agreements establish that there was a complete assignment of claims here; no additional discovery is required to make this determination.

Each agreement between the Clients and CPIM accomplished a complete assignment of all claims relating to the Securities, transferring absolute ownership of the claims to CPIM, with CPIM consequently having exclusive control over the enforcement of all claims relating to the Securities in this action or otherwise.  The consideration paid to the assignors is the right to receive a percentage of future recoveries.  Plaintiff has a longstanding history with each assignor, having provided exclusive investment advisory services for all of the Clients since their inception.  Thus, CPIM is in the best position to bring these claims because CPIM made all investment decisions on behalf of the assignors, engaged in the very communications with Defendants that are the subject of this litigation, including in meetings at CPIM's offices in Massachusetts, and is in possession of all of the transactional documents.  Individuals employed by CPIM, not by any of its Clients, are the persons with knowledge about Defendants' misrepresentations and omissions that form the basis for Plaintiff's claims in this action.

The Supreme Court's recent decision in *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 128 S. Ct. 2531 (2008), is instructive.  In *Sprint*, the Supreme Court held that "an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor."  128 S. Ct. at 2533.  In *Sprint*, the plaintiff was an "aggregator" to which payphone operators "assign[ed], transfer[ed] and set[] over" to "all rights, title and interest" in their claims against long-distance carriers.  The Supreme Court held that "there is 'no reason to believe the assignment is anything less than a <u>complete transfer</u> to the aggregator.'"  *Id.* at 2542 (emphasis added) (quoting with approval the underlying circuit decision, 418 F.3d at 1243).  The assignment agreements in *Sprint* provided that the assignee would remit the litigation proceeds to the assignors after conclusion of the action.  *See id.*  The defendants in *Sprint* argued that this

10

provision and the return of eventual recoveries destroyed standing.  *See id.*  The Supreme Court

rejected this argument, stating that "the [standing] inquiry focuses, as it should, on whether the

injury that a plaintiff alleges is likely to be redressed through the litigation – not on what the

plaintiff ultimately intends to do with the money he recovers."  *Id.*  Here, too, the Clients

completely assigned their claims to CPIM, and the Clients' right to receive proceeds from the

litigation is valid consideration that does not undermine the validity of the assignment, or make it

"partial."

The assignments here are valid for diversity purposes under federal law because they are

complete assignments under Massachusetts law.  *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089,

1093-94 (9th Cir. 2004) (in diversity actions, whether a party is the real party in interest under

Fed. R. Civ. P. 17(a) depends upon applicable state substantive law); *MHI Shipbuilding, LLC v.

Nat'l Fire Ins. Co. of Hartford*, 286 B.R. 16, 27-28 (D. Mass. 2002) (same).  Under

Massachusetts law, an assignment of "all of [assignor's] rights, title and interest in any and every

claim that [assignor] had or may have had against [defendant]..." is sufficient to assign claims

under Massachusetts anti-fraud laws.  *O'Connor Cafe of Worcester, Inc. v. Liquor Liab. Joint

Underwriting Ass'n of Mass.*, 1999 WL 792199, at *2 (Mass. Super. Ct. Sept. 13, 1999)

(emphasis in original).  Broad language such as "all" and reference to sweeping concepts like

"interest" create a valid complete assignment.  *See id.*

In addition, the assignment agreements transferred to CPIM both rights "arising under,"

*i.e.*, directly connected to the securities transactions at issue, and rights that arise "by reason of"

those transactions, *i.e.*, rights that are "peripheral" though still related to the transactions at issue.

*See Larabee v. Potvin Lumber Co.*, 459 N.E.2d 93, 97 (Mass. 1983).  The assignment

agreements also require the Funds' full cooperation in connection with perfecting or enforcing

the assigned rights, and prohibit the Funds from separately acting on the claims, thereby ensuring

that the Defendants will not subjected to litigating this matter more than once.  *See, e.g., Barry v.*

*Duffin*, 195 N.E. 511, 513 (Mass. 1935) (noting, in enforcing assignment, that "[i]t is of no

concern to the debtor whether proceedings are brought in the name of the assignor, or, where

permitted, in the name of the assignee, so long as the debtor is in no danger of double liability")

(internal citations omitted); *Platt v. Plymouth Rock Assurance Corp.*, 2006 WL 279045, at *2

(Mass. App. Div. Jan. 10, 2006) ("It makes no difference to a debtor whom he pays as long as he

does not pay twice.").

Indeed, Federal Rule of Civil Procedure 17(a) requires that an action "be prosecuted in

the name of the real party in interest."  Fed. R. Civ. P. 17(a).  "'The federal courts . . . and all of

the state courts . . . have been in full accord in holding that the unconditional assignee of a

complete chose in action is the real party in interest and suit must be brought in his name.'"

*Overseas Development Disc. Corp. v. Sangamo Construction Co.*, 686 F.2d 498, 505 n.17 (7th

Cir. 1982) (quoting 3A MOORE'S FEDERAL PRACTICE ¶ 17.09(1.-1) at 17-84).  *See, e.g., Emerald*

*Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 199 n.10 (3d Cir. 2007) (assignee is

real party in interest); *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1240,

1244 (10th Cir. 2005) (same).  Thus, in diversity cases where Massachusetts law applies, an

assignor who totally assigns a claim lacks standing to sue on that claim, and the claim must be

brought by the assignee.  *See MHI Shipbuilding*, 286 B.R. at 28.  Likewise under the

corresponding provision of Massachusetts Rule of Civil Procedure 17(a), "[w]here there had

been a total assignment, as in this case, the modern rules of practice indicate that it is the

assignee who is the real party in interest and the party in whose name an action is to be

prosecuted. . . . [T]he rule is clear that the assignor is not the real party in interest . . . ."  *Platt*,

2006 WL 279045, at *2.  *See also O'Connor Cafe*, 1999 WL 792199, at *3 (same).

Massachusetts law and federal law are in accord that CPIM, as assignee of the entire interest in

the claims at issue here, is the sole proper Plaintiff.

Defendants' reliance on *JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87 (D.

Mass. 1999), *Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593 (9th Cir. 1996),

and *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990), is misplaced because in those

cases, unlike here, the assignors remained as plaintiffs and assigned only part of the litigation to

the assignees.[26]   In addition, as discussed further below, the assignees in those cases were either

shell corporations or individuals that were added solely to create or destroy jurisdiction.

### C. Even If The Court Assumes There Was A Partial Assignment, Jurisdictional Discovery Is Not Warranted

The Assignment Agreements prove that the Clients executed complete assignments of all

claims related to the Securities.  Even if the Court were to apply the criteria of *JMTR*, *Attorneys*

*Trust*, and *Grassi* – which it should not because the assignments here were complete assignments

– the assignments do not have the characteristics that led the courts in Defendants' cases to

disregard assignments for diversity purposes.

*JMTR Enterprises* sets forth five illustrative factors that could indicate whether an

assignment was improperly or collusively made:  (1) the assignment was partial, rather than

total; (2) the assignee did not pay consideration to the assignor; (3) the motive for the assignment

was to stay in state court; (4) the assignee had no interest in the subject matter of the litigation

---

[26]     *See JMTR Enter.*, 42 F. Supp. 2d at 92 (injured parties assigned 25% of their claims to a non-diverse corporation created for purposes of litigation, while retaining the remainder of the claims and appearing as plaintiffs in the litigation); *Grassi*, 894 F.2d at 182 (an injured party domiciled in the United States remained as plaintiff in the litigation, assigning only a 2% interest in their claim to a diverse foreign corporation in an action filed against a foreign defendant in order to destroy diversity based on the existence of foreign parties on both sides of the action); *Attorneys Trust*, 93 F.3d at 599 (assignee was entitled to 12% contingent fee in action where foreign injured party was also a plaintiff represented by the same counsel as assignee).  Here, CPIM was assigned 100% of the Assignors' claims.

before the assignment; and (5) the assignment was made shortly before the suit was filed. *See JMTR Enter.*, 42 F. Supp. 2d at 92 (citing *Grassi*, 894 F.2d at 186). All five of these factors can be readily addressed – and decided in CPIM's favor – without further discovery.

First, as discussed in Section III(A), and demonstrated by the Assignment Agreements themselves, the Assignment Agreements are total and complete assignments of "all rights, title and interest" of Clients' claims to CPIM. In the cases cited by Defendants, each assignment was clearly partial. *See supra*, n. 26. No additional discovery is required to examine this factor.

Second, as discussed above and demonstrated by the Assignment Agreements, valid consideration was exchanged for the assignments. *See supra*, at II(B). In all of the cases cited by Defendants, nominal or no consideration was exchanged for the assignments.[27] No additional discovery is required to examine this factor.

Third, the motive for the assignment is not determinative of the Court's analysis of the legitimacy of the assignments. "Case law makes clear that the legitimacy of the transfer or assignment of a mortgage is a far more important factor in determining whether jurisdiction was collusively manufactured than is the motive of the parties for the assignment."[28] In *Land Holdings (St.Thomas)*, the court held that "'[i]f the [assignor] retains no interest in the subject matter and the [assignment] is unconditional, the [assignment] is not improper or collusive even

---

[27]     *See JMTR Enter.*, 42 F. Supp. 2d at 92 (partial assignee "paid no consideration for the assignment"); *Grassi*, 894 F.2d at 182 (in partial assignment, the partial assignee provided no consideration other than "investigative and collection work"; *Attorneys Trust*, 93 F.3d at 599 (in partial assignment, "the assignee gave no consideration other than its own collection work for a contingent fee, which could have been effectuated without an assignment"). Here, CPIM assumes all risks and costs of the litigation, which will likely escalate into the millions of dollars, and has provided the assignors with consideration in the form of the right to receive a substantial percentage of eventual recoveries in this action.

[28]     *Land Holdings (St.Thomas) Ltd. v. Mega Holdings, Inc.*, 283 F.3d 616, 619 (3d Cir. 2002) (quoting *Nobel v. Morchesky*, 697 F.2d 97, 101 (3d Cir.1982)).

if motivated by a desire to create diversity.'"[29]  Here, as discussed above, CPIM is the real party in interest and its personnel directly received the misrepresentations from the Defendants and are in the best position to prosecute the claims.  It is not uncommon for investors to assign their claims to investment advisors.[30]  Even if CPIM's preference to bring the claims in state court was one consideration, among many, for entering into the Assignment Agreements, that is legitimate and not collusive, especially when the assignment transaction as a whole is legitimate. Additional discovery into the subjective motive to bring this action in state court is unwarranted.

Fourth, as discussed above and demonstrated by the recitals to the Assignment Agreements, CPIM has had an interest in the subject matter of this action since 2005.  Moreover, it is CPIM, and not the Clients, that "would be best positioned to pursue these claims in an efficient and appropriate manner" because it is CPIM that has direct knowledge about each of the Securities, and was the direct recipient of the documents and oral misrepresentations related to the Securities.  *See supra*, at II(A).  In the cases cited by Defendants, the assignees were either shell corporations formed for the purposes of litigation,[31] or the assignee was a collection agency hired by the assignor for the purposes of litigation.[32]  No additional discovery is required to examine this factor.

---

[29]    *Id.*; *see also Reinhart Oil & Gas, Inc. v. Excel Directional Tech., LLC*, 463 F. Supp. 2d 1240, 1247-48 (D. Colo. 2006) (finding that when considering whether the totality of the circumstances supports a finding that a diversity-creating assignment was collusive, subjective motive behind the assignment is at best of secondary importance to a court's inquiry into objective factors that establish the reality of the assignment agreement).

[30]    *See, e.g.*, *W.R. Huff Asset Management Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (finding that investment advisor must be assigned the claims of its clients in order to have standing to bring suit for the clients' losses).

[31]    *See JMTR Enter.*, 42 F. Supp. 2d at 92 (assignee was a shell corporation created four days before the litigation was commenced; assignee "had no interest in the litigation before the assignment, since it did not exist"); *Grassi*, 894 F.2d at 182, 186 (partial assignee, which was created 18 months after injured party received a foreign default judgment and six months before filing the collection action in the United States, had no prior interest in litigation).

[32]    *See Attorneys Trust*, 93 F.3d at 599 (assignee was a collection agency with "no prior interest in the claim" and with no other connection to the injured party).

Fifth and finally, as discussed above and demonstrated by the Assignment Agreements, the Assignment Agreements were formally executed between April 29, 2010 and July 6, 2010, all before this suit was filed.  There is nothing collusive or improper about the timing of the Assignment Agreements in light of the long-standing relationship between CPIM and the Clients.  In any event, the dates of the Assignment Agreements are now documented before the Court.  No additional discovery is required to examine this factor.

### D.  Jurisdictional Discovery Is Not Warranted Because Defendants Were Properly Joined and Defendants' Request for Discovery Is Not Likely To Result in Any Relevant Evidence

Defendants seek no jurisdictional discovery related to their contention regarding purported misjoinder.  Therefore, this entire argument by Defendants is completely irrelevant to the motion at hand.  Defendants' misjoinder argument also has no merit for the reasons discussed below.

First, the doctrine of procedural misjoinder as set forth in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), has never been adopted by the First Circuit or applied by a Massachusetts district court.  *See Palmer v. Davol, Inc.*, 2008 WL 5377991, at *3 (D.R.I. Dec. 23, 2008).[33]  In *Palmer*, the court cited a host of cases criticizing the doctrine of procedural misjoinder in general and the decision in *Tapscott*, in particular, and concluded that "[w]ithout direction from the First Circuit, and in light of the rule of strict construction of the removal statute *coupled* with a significantly unsettled landscape surrounding application of the

---

[33]      The First Circuit case cited by Defendants – *Abdullah v. Acands, Inc.* – merely restates the language of Federal Rule of Civil Procedure 20(a)(2)(A), which governs the permissive joinder of parties and provides no support for Defendants' position.  *See* 30 F.3d 264, 268-69 & n.5 (1st Cir. 1994) (affirming dismissal of asbestos-related MDL case brought by 1,000 plaintiffs against 93 defendants, noting that "failure to allege a basis for joinder was only one of the many weaknesses identified by the court") (emphasis in original).

doctrine in federal courts, this Court declines to adopt a doctrine that will further complicate the question of removal and federal jurisdiction." *Id.* at *4 (emphasis in original).[34]

Second, Defendants do not actually assert that a defendant-by-defendant analysis would actually create diversity jurisdiction.  The doctrine of procedural misjoinder, should the Court apply it here, is intended to prevent parties from joining non-diverse parties in an attempt to defeat diversity jurisdiction.  Although Defendants assert that diversity of the parties should be analyzed separately for each of the 16 Wall Street Bank Defendants and the Depositor Defendants that participated in that Bank's RMBS offerings at issue, they conspicuously fail to assert that such an analysis would actually demonstrate that there is diversity jurisdiction over any of the hypothetical 16 separate cases.  In fact, as Defendants admit, most of the Wall Street Bank Defendants and Depositor Defendants are Delaware corporations, as is CPIM, so that even if the parties were analyzed piecemeal as Defendants suggest, there would still be no diversity jurisdiction.

Third, all of the Defendants were properly joined because this action alleges a common scheme and course of conduct by the Defendants, all of which made substantially identical misrepresentations and omissions about their own due diligence in acquiring and securitizing mortgages and about the underlying mortgage loan originators' underwriting and appraisal standards.[35]  Plaintiff's claims against Defendants were appropriately consolidated in this action

---

[34]    Defendants do not and cannot argue that fraudulent joinder is implicated here.  To do so they would have to make the entirely untenable argument that "there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court."  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 109, 117 (D. Mass. 2006) (citations omitted).

[35]    The case cited by Defendants – *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1988) – actually supports joinder here.  In *Michaels Building*, the court actually sustained claims brought by borrowers against different banking groups alleging that various loan agreements entered into with the various banking groups violated RICO, the Sherman Act and Ohio state law.  *Id.*  The court upheld the dismissal of only one defendant banking group based on a theory of misjoinder, noting that the claims against that banking group were "*wholly unrelated* to other matters at issue in the case" and that the loan at issue "has *no relation* to the loans made by the other defendants."  *Id.* at 682 (emphasis added).

which concerns not only the Defendants' common course of conduct, but also involves identical

personnel and investment processes employed by Plaintiff.  Given the overwhelming

commonalities of Plaintiffs' claims against Defendants, it would be illogical to insist that sixteen

different lawsuits be filed when they would all ultimately be consolidated.

Finally, the question of whether this action should properly be litigated as one action or

several actions against appropriate subgroups of the Defendants is a routine case management

issue that can be addressed after decision on the motion to remand.

### E.   Defendants' Proposed Discovery Is Unnecessary, Irrelevant And Overbroad

Defendants' proposed discovery is wildly overbroad and burdensome.  Plaintiff,

therefore, reserves its objections to such discovery.[36]  Clearly, however, Defendants seek

documents and testimony going to the merits of this case, documents and information already in

Defendants' possession, and information having nothing to do with jurisdiction.

For example, Defendants request all documents and communications relating to the

purchases of the Securities and testimony on this topic.  *See* Request No. 3; Examination Topic

No. 2.  Moreover, Defendants request "trade confirmations" and "amounts and dates of such

purchases," but those documents are equally in Defendants' possession.  *See* Request No. 3.

Defendants also have information in their possession, or access to information in the public

domain, concerning the domicile and citizenship of the assignors.  *See* Request Nos. 1 and 2.

Defendants' overbroad document requests are therefore unnecessary for their purported,

jurisdictional reasons.  The Assignment Agreements establish the requisite information and are

the best evidence of the complete assignment of the claims to CPIM.  *See* Request Nos. 4-6.

---

[36] In their motions, Defendants proposed that CPIM serve any such objections after discovery is propounded.

Accordingly, production of additional documents and testimony would be duplicative,

burdensome, harassing and unnecessary for the pending motion to remand.

## IV.     CONCLUSION

For the reasons discussed above, Plaintiff respectfully submits that Defendants' motion

for jurisdictional discovery should be denied in its entirety.

Dated: November 1, 2010            **CAMBRIDGE PLACE INVESTMENT**
                                   **MANAGEMENT INC.**

                                   By its attorneys,

                                   */s/ David R. Stickney*
                                   David R. Stickney (admitted *pro hac vice*)
                                   Timothy A. DeLange (admitted *pro hac vice*)
                                   Matthew P. Jubenville (admitted *pro hac vice*)
                                   Takeo A. Kellar (admitted *pro hac vice*)
                                   BERNSTEIN LITOWITZ BERGER
                                       & GROSSMANN LLP
                                   12481 High Bluff Drive, Suite 300
                                   San Diego, CA 92130
                                   Tel:  (858) 793-0070
                                   Fax:  (858) 793-0323
                                   davids@blbglaw.com
                                   timothyd@blbglaw.com
                                   matthewj@blbglaw.com
                                   takeok@blbglaw.com

                                           -and-

                                   Gerald H. Silk (admitted *pro hac vice*)
                                   David L. Wales (admitted *pro hac vice*)
                                   Jai Chandrasekhar (admitted *pro hac vice*)
                                   Lauren A. McMillen (admitted *pro hac vice*)
                                   BERNSTEIN LITOWITZ BERGER
                                       & GROSSMANN LLP
                                   1285 Avenue of the Americas, 38th Floor
                                   New York, NY 10019
                                   Tel:     (212) 554-1400
                                   Fax:     (212) 554-1444
                                   jerry@blbglaw.com
                                   dwales@blbglaw.com
                                   jai@blbglaw.com
                                   lauren@blbglaw.com

-and-

T. Christopher Donnelly
(BBO # 129930)
Michael S. D'Orsi
(BBO # 566960)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33d Floor
Boston, MA 02108
Tel:  (617) 720-2880
Fax:  (617) 720-3554
tcd@dcglaw.com
msd@dcglaw.com

Counsel for Plaintiff Cambridge Place
Investment Management Inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing on

November 1, 2010.


        */s/ David R. Stickney*
        DAVID R. STICKNEY